**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THERA LAMBERT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Thera Lambert ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against American Family Mutual Insurance Company ("Defendant") and allege as follows:

**INTRODUCTION**

1.      This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles to arbitrarily reduce the ultimate payment to insureds who make total-loss claims under insurance policies issued by Defendant.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit A** is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

1

3.     Defendant ignores and avoids its straightforward contractual obligation by directing its third-party vendor to systematically reduce total-loss valuations. Defendant's third-party vendor identifies the price of comparable vehicles listed for sale in the relevant market. *After* the vendor determines the value of the comparable vehicles, Defendant instructs its vendor to apply an arbitrary and baseless flat-rate adjustment to the value of each "comparable vehicle," which Defendant and its vendor call a "typical negotiation adjustment."

4.     The "typical negotiation adjustment" is not based on any negotiations, typical or otherwise, and is not based on any market realities. Rather the "typical negotiation adjustment" ranges from 4-11% of the value of the "comparable vehicle." The vehicles with lesser value are subject to a greater percentage reduction, with the percentage adjustment becoming lower as the value of the "comparable vehicles" increases. This percentage reduction artificially reduces the total-loss payment for the totaled vehicle and, with the sliding percentage scale, ensures that every total loss payment Defendant makes to insureds is significantly and unconscionably reduced.

5.     An integral part of Defendant's fraudulent scheme is a provision of the Policy which requires the parties to submit to an appraisal of the loss if there is a disagreement over the ACV. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the

artificially determined loss-payment for the total-loss claims. As designed by Defendant, the appraisal provision prevents plaintiff and the Class from effectively vindicating their rights under the Policy.

6.     To be clear, this case does not present a dispute about loss—which both Parties agree exceeds ACV, such that the vehicle is a total loss—or even ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policies, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7.     Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any roll in drafting its terms.

8.     Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant violated consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, breached its contracts and the covenant of good faith and fair dealing with its insureds, and was unjustly enriched.

9.     As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of her bargain, and thus sustained actual damages.

10.     By this action, Plaintiff, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

11.    Plaintiff Thera Lambert, at all relevant times, was an Illinois citizen. Plaintiff owned a 2010 BMW 528xi that was insured under a Policy issued by Defendant, which was deemed a total loss on or around December 31, 2016. Plaintiff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Plaintiff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Plaintiff's total loss claim at $13,654.00. The market valuation report listed values of five different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation adjustment" of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 3-4, attached as **Exhibit B**.

12.    Defendant American Family Mutual Insurance Company is a Wisconsin company with its principal place of business in Wisconsin. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

13.    Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Illinois. Defendant is a Wisconsin Corporation that has its corporate headquarters in Wisconsin, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Illinois.

14.    Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the typical negotiation adjustments that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed

$5,000,000.00.

15.    Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

**"Typical Negotiation"**

16.    When valuing total-loss automobile claims, insurance companies like Defendant use third party companies to determine and purportedly pay the ACV of an insured's totaled vehicle subject to reduction for any policy deductible (and salvage value, if the insured retains the totaled vehicle).

17.    To avoid full payment under its policies, Defendant has devised a blatant and unlawful scheme to reduce its total-loss payments to insureds, by use of an arbitrary and baseless "typical negotiation" adjustment.

18.    Specifically, Defendant purports to determine the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). The Autosource system identifies the price of comparable vehicles listed for sale online in the relevant market. Through Autosource, Defendant applies an arbitrary, invalid, and baseless "typical negotiation adjustment" to the comparable vehicles before determining the total-loss payment Defendant will make.

19.    Defendant's "typical negotiation" adjustment is arbitrary and unsupportable. When offering the total-loss payment to an insured whose car was totaled, Defendant represents that the "typical negotiation" adjustment reflects the amount for which the car dealer will actually sell the vehicle. *See* Ex. B at 3. This is false. Neither Defendant nor any of its agents speak with any of the car dealers at all who they represent are willing to reduce the price of the vehicle. Defendant simply

5

makes it up.

20.     Moreover, the across-the-board 4-11% reduction on used vehicles' internet prices is based on no negotiations, typical or otherwise, and does not reflect market realities, and neither relevant state insurance laws and regulations nor the Policy permit Defendant to make this arbitrary deduction. Indeed, Defendant applies the "typical negotiation adjustment" without contacting the identified dealerships or sellers, or even considering whether the car dealer ever discounts its price from the online listed price. Notably, in applying a universal percentage-based "typical negotiation adjustment" reduction, Defendant failed to consider that it is increasingly the practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices.[1] Indeed, in addition, particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically *increasing* from posted price if it changes at all.[2]

21.     Even setting COVID-19 aside, it was and is extremely rare for car dealers to sell a vehicle for less than the ***online*** listed price and, far more often than not, cars are sold for ***more*** than the online listed price. This is because online car shoppers are sophisticated consumers who are comparing the online listed price of a vehicle across multiple dealers in a broad geographic region. As such, car dealers list what is essentially the "best offer" or lowest possible price at which they can still maintain a profit margin, and do not negotiate from that price. Online shoppers can buy

---

[1] *See, e.g.*, https://www.autonationlincolnclearwater.com/autonation-one-price.htm (last visited Sept. 24, 2021) ("Not only is our no-haggle price low, it's guaranteed."); https://www.carmax.com/about-carmax (last visited May September 26, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

[2]*See* https://www.cnbc.com/2021/08/07/used-car-prices-to-stay-high-until-automakers-fix-production-issues.html (last visited Sept. 16, 2021); https://abc7chicago.com/car-chip-shortage-2021-prices-auto-gm-closes-factories/11005980/ (last visited Sept. 16, 2021).

the car or not—what they generally cannot do is negotiate the price down over email or telephone.

22.     Most cars, however, are sold in-person, where the price listed on the lot is not easily comparable to multiple other car dealers and thus, generally, cars are often sold for higher—sometimes far higher—than their online listed price.

23.     Worse, ***Defendant knows this to be the case***. Defendant, directly or through its agents and vendors, has access to data that demonstrates it is ***far*** more likely that a given vehicle will be sold for ***more*** than its online listed price than it is that it will be sold for ***less*** than its listed price. Despite such knowledge, Defendant falsely represents that every single vehicle—every single total loss claim—is likely to be sold for a flat percentage less than its listed online price. If Defendant's valuation was based in actual fact and market reality of what is "likely" to happen, Defendant would ***increase*** the amount from the online listed price.

24.     The arbitrary "typical negotiation adjustment," ranging from 4-11% of the value of the comparable vehicle, is keyed only to the value of that vehicle, as the value of the "comparable vehicles" increases. This sliding percentage scale does not reflect "actual value" of the vehicle vehicles or any "typical negotiation," but rather is meant to ensure that Defendant's total loss payments are significantly reduced, even when a vehicle is not valuable.

25.     Plaintiff does not contest the vehicles Defendant selected to use as comparable vehicles. Plaintiff does not contest Defendant's representations of the listed price of comparable vehicles. Plaintiff does not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. What Plaintiff contests is that Defendant instructed Audatex to apply arbitrary, capricious, and invalid "typical negotiation" adjustment across-the-board in determining its total-loss payments.

**Defendant's Deceptive and Unfair Appraisal Process**

26.     An integral part of Defendant's fraudulent scheme is a provision of Policy which

requires the parties to submit to an appraisal if there is a disagreement over the amount of loss. The appraisal provision requires the insured and the insurer to hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will almost certainly forego the appraisal process and accept the artificially reduced ACV of the vehicle for their total-loss claims. As designed, the appraisal clause prevents plaintiff and the Class from effectively vindicating their statutory and common law causes of action.

27.     To be clear, this case does not present a dispute about the amount of loss. Plaintiff does not contest Defendant's determination of the amount of loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendant to be a total loss, i.e., totaled (uneconomical to repair). Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issue that cannot be resolved through an appraisal process that is part of that very scheme.

28.     Importantly, Plaintiff does not contest the ***amount*** of the "typical negotiation" adjustment. Said another way, it is not that Defendant believes the Policy and Illinois law allow for a 6% typical negotiation adjustment, while Plaintiff believes only a 3% adjustment is permitted. Rather, Plaintiff alleges that ***no typical negotiation adjustment is permitted at all*** as a matter of law. This question cannot be determined through appraisal.

29.     In sum, there is no dispute over the amount of loss. The dispute is over the vehicle's ACV.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Illinois citizens insured by Defendant who, from the earliest allowable time through the date an Order granting class certification is entered, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similarly-titled adjustment.

31.     Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

32.     Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

33.     **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

34.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

> a.   whether Defendant's practice of applying a "typical negotiation adjustment" in determining total-loss payments is a breach of its contractual obligations;
>
> b.    whether Defendant's failure to disclose its use and use of a "typical negotiation

adjustment" when determining total-loss payments for a totaled vehicle until such an assessment is made is deceptive to a reasonable consumer, unconscionable, or otherwise a violation of the relevant consumer protection statute(s);

c.  whether Defendant's practice of applying a "typical negotiation adjustment" in determining total-loss payments breached the covenant of good faith and fair dealing it has with Plaintiff and the other Class members;

d.  Whether Defendant was unjustly enriched at the expense of Plaintiff and the other Class members as a result of its conduct;

e.  whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief based on Defendant's conduct; and

f.  whether Plaintiff and the Class are entitled to damages and the measure of damages owed to them.

35.  **Typicality.** Plaintiff's claims are typical of the other Class members' claims because Defendant undertook the same practice of applying a "typical negotiation adjustment" in determining total-loss payments under materially similar policy provisions requiring payment of ACV. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

36.  **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately

protected by Plaintiff and her counsel.

37.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### COUNT 1
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1, *et seq.*

38.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

39.     This Count is brought by Plaintiff individually and on behalf of the Class.

40.     Defendant, Plaintiff, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

41.     Plaintiff and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

42.     Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

43.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois

11

CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

44.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above, in its Policy or otherwise until after the adjustments were made as part of the total-loss claim process.

45.     Moreover, Defendant knowingly and intentionally represented that the specific car dealers were "likely" to sell the vehicles for significantly less than the online listed price, despite (i) never having spoken with or discussed such issue with any of the represented car dealers and (ii) knowing that it was exceedingly *unlikely* that the vehicles would be sold for less than the online listed price and, indeed, more likely that the vehicles would be sold for *more* than the online listed price.

46.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

47.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment"

to comparable vehicles, and its failure to comply with Illinois law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

48.     Defendant's misrepresentations and omissions regarding their application of an arbitrary "typical negotiation adjustment" to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

49.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

50.     The facts regarding Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members.

51.     Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

52.     Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation adjustment" to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

53.     Plaintiff and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation adjustment" to comparable vehicles, including that the "typical negotiation adjustment" is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

54.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payment to insureds.

55.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant or would not paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

56.     Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiff and the Class members.

57.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 2

**BREACH OF CONTRACT**

58.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

59.     This Count is brought by Plaintiff individually and on behalf of the Class.

60.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

61.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

62.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

63.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment—and, in some cases, ordered the adjustments solely based on disadvantaging insureds and advantaging Defendant[3]—to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

---

[3] If a comparable vehicle and the total-loss vehicle have different equipment packages, Defendant adjusts the comparable vehicle's listed price to account for such differences, which might be an upward or downward adjustment (upward if the total-loss vehicle possesses equipment the comparable vehicle lacks, downward if the opposite). If the equipment adjustment is a positive adjustment (increasing price of comparable vehicle), Defendant applies it before applying the typical negotiation adjustment—thus, if the equipment adjustment is, say, $300.00, the typical negotiation adjustment is now a percentage of an amount $300.00 higher than had Defendant applied the typical negotiation adjustment first. But if the equipment adjustment is a downward adjustment (decreasing the price of the comparable vehicle), Defendant applies the typical negotiation adjustment first, so that, again, the typical negotiation adjustment is a percentage of the higher value. In other words, Defendant orders the adjustments in whatever way is most advantageous to Defendant and harmful to insureds.

64.     Defendant also failed to comply with Illinois law, incorporated into the Policy, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

65.      Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

66.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 3

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

67.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

68.     This Count is brought by Plaintiff individually and on behalf of the Class.

69.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

70.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

71.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

72.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code

Section 919.80(c)(2).

73.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Ordering the adjustments, even if allowed, in the way most advantageous to Defendant and harmful to insureds;

    c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable

74.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 4

## UNJUST ENRICHMENT

75.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

76.     This Count is brought by Plaintiff individually and on behalf of the Class.

77.     Plaintiff pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

78.     Defendant requested and received a monetary benefit at the expense of Plaintiff and

Class members in the form of premium payments for automobile insurance coverage.

79.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce their ACV payment to insureds.

80.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

81.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation adjustment" to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Illinois law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

82.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

83.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 5**

**DECLARATORY JUDGMENT**

84.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

85. This Count is brought by Plaintiff individually and on behalf of the Class.

86. A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

87. Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary typical negotiation adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

88. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of their contracts of insurance with Plaintiff and members of the Class.

89. As a result of these breaches of contract, Plaintiff and the Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A. An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B. An award of damages (including actual, compensatory, statutory, and punitive, as provided

by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.  Disgorgement of Defendant's profits;

D.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E.  An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F.  An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: February 8, 2022

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Illinois Bar No. 6337427
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

***Counsel for Plaintiff and the Proposed Class***